NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

ROBERT LUIZ MARTINEZ,              :
                                                  Civil Action No. 09-1333 (JBS)
                    Petitioner,      :

          v.                    :     **OPINION**

WARDEN JOHN NASH,                  :

                    Respondent.      :

**APPEARANCES:**

Petitioner pro se                 Counsel for Respondent
Robert Luiz Martinez              Irene E. Dowdy
FCI Fort Dix West                 Assistant U.S. Attorney
P.O. Box 7000                     401 Market Street
Fort Dix, NJ 08640                Fourth Floor
                                  P.O. Box 2098
                                  Camden, NJ 08101

**SIMANDLE**, District Judge

     Petitioner Robert Luiz Martinez, a prisoner currently

confined at the Federal Correctional Institution at Fort Dix, New

Jersey, has submitted a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden

John Nash.

_____

     [1] Section 2241 provides in relevant part:

     (a) Writs of habeas corpus may be granted by the
     Supreme Court, any justice thereof, the district courts
     and any circuit judge within their respective
     jurisdictions.
     (c) The writ of habeas corpus shall not extend to a
     prisoner unless-- ... (3) He is in custody in violation
     of the Constitution or laws or treaties of the United
     States ... .

Because it appears from a review of the Petition and responses that Petitioner is not entitled to relief, the Amended Petition will be denied.  See 28 U.S.C. § 2243.

## I.  BACKGROUND

Petitioner has been convicted and sentenced in federal court on four separate occasions.

(1)  United States v. Berk, Criminal No. 77-0429 (S.D.N.Y.). On May 20, 1983, Petitioner was sentenced, under the name "Berk," to a five-year term of imprisonment, on a conviction that he unlawfully, intentionally and knowingly combined, conspired, confederated, and agreed with others to violate 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 952(a), 955.

(2)  United States v. Martinez, Criminal No. 84-0578 (S.D.N.Y.).  On February 22, 1985, Petitioner was sentenced to a three-year term of imprisonment, to be served consecutively to the prior five-year term, on a conviction for attempted murder in violation of 18 U.S.C. § 1113.

(3)  United States v. Martinez, Criminal No. 84-0499 (S.D.N.Y.).  On March 27, 1987, Petitioner was sentenced to a 35-year term of imprisonment, on a conviction for engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848, and to a five-year term of imprisonment, on a conviction for traveling in foreign commerce to promote unlawful criminal enterprise, in violation of 18 U.S.C. § 1952, with the five-year

2

sentence to run consecutive to the 35-year sentence, and with both sentences to run consecutive to the two sentences previously imposed in the Southern District of New York.  Parole is not available for the 35-year sentence.

(4)  United States v. Martinez, Criminal No. 83-0506 (E.D.N.Y.).  On April 15, 1997, Petitioner was sentenced to a one-year sentence, on a conviction for distribution of Schedule I narcotic drugs, in violation of 21 U.S.C. § 841(a)(1), to be served concurrently with the sentence he was then serving.

As noted above, the 35-year sentence for a continuing criminal enterprise is non-parolable, see 21 U.S.C. § 848 and Johnson v. Williford, 682 F.2d 868, 870-71 (9th Cir. 1982); all remaining sentences are parole eligible.

The United States Parole Commission (the "Commission") considered Petitioner for parole in 1983, on his first conviction.  On November 23, 1983, the Commission ordered that Petitioner serve to the expiration of that five-year term.

On October 30, 1986, upon being advised that the first two sentences involved the same prisoner, the Commission re-opened Petitioner's case and scheduled him for a new initial hearing, on the next available docket, to consider the new three-year sentence for attempted murder.  Before that hearing could be scheduled, however, Petitioner was sentenced to the 35-year non-parolable sentence on his conviction for engaging in a continuous

3

criminal enterprise and the consecutive five-year parolable sentence for traveling in foreign commerce to promote unlawful criminal enterprise.  Accordingly, the Bureau of Prisons recomputed Petitioner's multiple parolable and nonparolable sentences.  At that point, the Bureau of Prisons calculated Petitioner's parole eligibility date as December 16, 2007.  On January 13, 2000, the Commission voided its earlier Notice of Action and directed that Petitioner be scheduled for a parole haring on the first available docket preceding the December 16, 2007 parole eligibility date.

In 2005, Petitioner filed his first petition for writ of habeas corpus in this Court, challenging the Bureau of Prisons' calculation of his parole eligibility date.  See Martinez v. Nash, Civil No. 05-0461 (D.N.J.).  There, this Court disagreed with the BOP's calculation and, on August 2, 2006, remanded the matter to the BOP to re-calculate Petitioner's parole eligibility date in accordance with this Court's instructions.  As this Court noted in its Opinion, because the Commission had never considered Petitioner's parole eligibility with respect to the three-year sentence for attempted murder, Petitioner was still subject to parole on that sentence, as well as on the fourth sentence. Pursuant to this Court's instructions, the BOP calculated Petitioner's parole eligibility date as March 26, 2009, a date substantially later than the previously-challenged December 16,

2007, date.  Thus, on December 28, 2006, the BOP filed a motion for partial relief from the Court's initial order, proposing an alternate model for recalculating Petitioner's parole eligibility date which, if accepted by the Court, would yield a parole eligibility date of September 5, 2007.  By Memorandum Order filed September 25, 2007, the Court determined that the BOP's proposed method of calculating Petitioner's parole eligibility date was not contrary to law and ordered "that Petitioner's parole eligibility date is September 5, 2007," that is, the date proposed by the BOP in its motion.  Civil No. 05-0461 (D.N.J.), Docket Entry Nos. 31, 39.

On April 19, 2007, while the BOP's motion for partial relief was pending in Petitioner's prior habeas action, the Commission conducted an initial hearing as to Petitioner's aggregated parolable sentences.[2]  The Commission rated the severity of Petitioner's offense behavior, attempted murder, as Category Eight and determined that his Salient Factor Score was 8.  By

---

[2] Under the governing statutes and regulations, Petitioner is entitled to release at his "two-thirds" date (that is, after having served two-thirds of his consecutive parolable terms) unless the Commission determines that there is a reasonable probability that he will commit a federal, state, or local crime or that he has frequently or seriously violated the rules of the institution (in which case the Commission may order that he serve to the expiration of his consecutive terms minus applicable credit for good conduct time.  See 18 U.S.C. § 4206(d); 28 C.F.R. § 2.53(a).  The BOP has computed Petitioner's "two-thirds" date as September 25, 2010.

Notice of Action dated May 22, 2007, the Commission ordered that

Petitioner serve to the expiration of his sentence.

> As a result of the hearing conducted on April 19, 2007,
> the following action was ordered:
>
> Continue to expiration.
>
> The Parole Commission has decided to continue you to
> the expiration of your sentence.  If the two-thirds
> date of your sentence (30 years in the case of a
> sentence of 45 years or more) precedes the mandatory
> release date calculated by the Bureau of Prisons, the
> Commission will conduct a record review of your case
> approximately 9 months prior to the two-thirds date.
> If a parole is not ordered as a result of the record
> review, the Commission will conduct a hearing for you.
> The purpose of the review or hearing is to determine
> whether there is a reasonable probability that you will
> commit any Federal, State, or local crime, or whether
> you have frequently or seriously violated the rules of
> the institution.  See 28 C.F.R. § 2.53(a).  If parole
> is denied, you will be continued until the expiration
> of your sentence less good time.
>
> ...
>
> REASONS
>
> Your offense behavior has been rated as Category Eight
> severity because it involved Attempted Murder.  Your
> salient factors score is 8. ...  Guidelines established
> by the Commission for the above offense behavior
> indicate a range of 100+ months to be served before
> release for cases with good institutional adjustment
> and program achievement.
>
> In addition, you have committed 1 non-drug related
> infraction(s).  Guidelines established by the
> Commission indicate a range of up to 2 months be added
> to your guidelines range for each non-drug related
> infraction.
>
> Your aggregate guideline range is 100+ months to be
> served.  After review of all relevant factors and
> information, a decision more than 48 months above the
> minimum guidelines is warranted because the offense

behavior is aggravated in that it included the conspiracy to murder a potential witness in a criminal proceeding against you.

In addition, you have also been scheduled for a statutory interim hearing during April 2009.

(Answer, Ex. USPC-8, Notice of Action.)

Petitioner appealed, asserting (1) that the Commission had failed to consider evidence of Petitioner's effective withdrawal from the scheme to commit murder, (2) that the Commission had miscalculated his Salient Factor Score, and (3) that the Commission had used the guidelines in effect in 2007, with amendments effective after November 1, 1987, allegedly in violation of the Ex Post Facto Clause.  By Notice of Action dated August 16, 2007, the National Appeals Board rejected Petitioner's arguments and affirmed the decision.

In December 2008, Petitioner waived his right to his statutory interim hearing in January 2009, indicating that he wanted more time to gather documentation.

Also in December 2008, Petitioner moved to re-open his prior habeas action to assert challenges to the 2007 denial of parole. Pursuant to the order of this Court, this new and separate habeas action was opened, and this Amended Petition was received on March 25, 2009.  Here, Petitioner asserts four grounds for relief: (1) when it conducted Petitioner's parole hearing in April 2007, the USPC used an improperly-computed parole eligibility date of March 26, 2009; (2) the USPC improperly

7

applied the presumption against parole release set forth in the
Note to the Guidelines Table, 28 C.F.R. § 2.20, which applies to
murder cases, but Petitioner's case involves <u>attempted</u> murder;
(3) the USPC acted with improper retaliatory motive and
vindictiveness in denying parole; and (4) the USPC denial of
parole decision is not supported by the facts.

While this action was pending, in a Notice of Action dated
May 26, 2009, the Commission ordered:

> At your upcoming Statutory Interim Hearing, the
> Commission will consider your case without reference to
> the presumption against parole release contained in the
> Note to the Guidelines Table.
>
> <u>REASONS</u>:
> The Note to the Guidelines Table, 28 C.F.R. § 2.20,
> does not apply in your case because your conviction is
> for Attempted Murder, not for First-Degree Murder.

(Answer, Ex. USPC-11, Notice of Action.)

Also during the pendency of this action, the Commission
conducted another parole hearing on September 4, 2009.  Although
the hearing was a statutory interim hearing, it was conducted as
an initial hearing.  The examiner did not apply the Note to
Guideline Table 28 C.F.R. § 2.20, because Petitioner's offense
was attempted murder.  The examiner indicated that he considered
"all factors" to determine if parole was appropriate.  The
examiner recommended parole effective December 3, 2009.  The
Executive Reviewer commented, "I will agree with the Examiner to
parole Martinez but, based on the time he has already been in

custody (nearly 27 years), I think he needs additional time for release planning.  I recommend a February release date."  In its October 20, 2009, Notice of Action, the Commission approved Petitioner for parole effective February 3, 2010, which is now Petitioner's projected release date.

Petitioner has filed an administrative appeal of the October 20, 2009, Notice of Action which is pending.  He has also filed in this action a "Motion for Decision and Judgment," Docket Entry No. 10, in which he seeks to assert various challenges to the October 20, 2009, Notice of Action.  The Court construes this Motion as a motion to amend the Petition to assert these additional claims.

Briefing on the Amended Petition is complete and it is now ready for decision.

## II.  PRO SE PLEADINGS

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  <u>THE SENTENCING REFORM ACT</u>

Before November 1, 1987, The Parole Commission and Reorganization Act of 1976 ("PCRA") governed the terms of federal sentences.  18 U.S.C. §§ 4201-4218 (repealed 1984, effective 1987).  Pursuant to 18 U.S.C. § 4206, the Parole Commission was authorized to award federal prisoners parole under specified circumstances.

> (a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:
>
> (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and
>
> (2) that release would not jeopardize the public welfare;
>
> subject to the provisions of subsections (b) [pertaining to written notice of decisions] and (c) [pertaining to decisions outside the guidelines] of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.
>
> ...
>
> (c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: <u>Provided</u>, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.
>
> ...

18 U.S.C. § 4206.

10

The discretion of the Parole Commission is to be guided by certain information.

> In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:
>
>> (1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;
>> (2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;
>> (3) presentence investigation reports;
>> (4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge;
>> (5) a statement, which may be presented orally or otherwise, by any victim of the offense for which the prisoner is imprisoned about the financial, social, psychological, and emotional harm done to, or loss suffered by such victim; and
>> [(6)] reports of physical, mental, or psychiatric examination of the offender.
>
> There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available.

18 U.S.C. § 4207.

Dissatisfied with this parole system, Congress passed the Sentencing Reform Act of 1984 ("SRA"), which repealed and replaced the PCRA, and which became effective on November 1, 1987.  Pub. L. No. 98-473, §§ 212, 218, 98 Stat. 1987, 2027 (codified as amended at 18 U.S.C. §§ 3551-59, 3561-66, 3571-74, 3581-86, 28 U.S.C. §§ 991-98 (1988)).  Under the SRA, parole was to be abolished for offenses committed after November 1, 1987;

11

the Parole Commission was to be phased out after five years; and
prisoners were to serve uniform sentences under sentencing
guidelines.[3]  Section 235(b)(3) of the original SRA provided
that:

> The United States Parole Commission shall set a release
> date, for an individual who will be in its jurisdiction
> the day before the expiration of five years after the
> effective date of this Act, that is within the range
> that applies to the prisoner under the applicable
> parole guideline.  A release date set pursuant to this
> paragraph shall be set early enough to permit
> consideration of an appeal of the release date, in
> accordance with Parole Commission procedures, before
> the expiration of five years following the effective
> date of this Act.

Id. (emphasis added).  On December 7, 1987, Section 235(b)(3) was
amended to delete the clause requiring the Commission to set
release dates within the guideline range.  See Sentencing Act of
1987, Pub.L. No. 100-182, § 2(b)(2), 1010 Stat. 1266 (1987).  The
amended section 235(b)(3) requires the Parole Commission to set
release dates "pursuant to section 4206 of Title 18 United States
Code," which permits release dates outside the guideline range.[4]

---

[3] The parole system remained in effect for prisoners, such
as Petitioner, whose crimes were all committed prior to the
November 1, 1987, effective date of the SRA.

[4]    The Court of Appeals for the Third Circuit clearly has
held that the 1987 amendment to § 235(b)(3), which reinstated the
authority of the Parole Commission to set parole release dates
outside the guideline range, violates the Ex Post Facto Clause
when applied to an offender who committed his crimes between
October 12, 1984, and November 1, 1987, during which time the
original § 235(b)(3) required the Parole Commission to set parole
release dates within the guideline range.  See Lyons v. Mendez,
303 F.3d 285 (3d Cir. 2002).

12

Congress repeatedly has extended the life of the Parole Commission to administer those prisoners with pre-SRA sentences. See, e.g., Pub.L. No. 101-650, Title III, § 316, 104 Stat. 5089, 5115 (1990) (extension to ten years); Pub.L. No. 104-232, § 2(a), 110 Stat. 3055 (1996) (extension to fifteen years); Pub.L. No. 107-273, § 11017, 116 Stat. 1758 (2002) (extension to eighteen years); Pub.L. No. 109-76, § 2, 119 Stat. 2035 (2005) (extension to twenty-one years).  The life of the Commission has been extended most recently to October 31, 2011.  See Pub.L. No. 110-312, § 2, 122 Stat. 3013 (2008) (extension to twenty-four years).

Pursuant to the guidelines promulgated by the Commission, at all times relevant to this action, a federal prisoner with an Offense Severity Rating of Eight has had a guideline range of at least 100-plus months to be served before release, regardless of the prisoner's Salient Factor Score.  28 C.F.R. § 2.20 Table

---

The Court of Appeals for the Third Circuit has held that it is unnecessary to consider whether the amended version of Section 235(b)(3) was applied unconstitutionally to a Category Eight offender whose offenses had been committed in 1976.  Madonna v. U.S. Parole Commission, 900 F.2d 24 (1990).  Assuming arguendo that no upward departure was permitted, the Court found that no upward departure had occurred, or could occur, because there is no upper limit to the guideline range applicable to Category Eight offenders.  Id. at 25-26.

Similarly, here, the Parole Commission has not set a parole reconsideration date outside of the guideline range, because the guideline range, at all relevant times, for Petitioner, a Category Eight offender, has been 100-plus months.

"Guidelines for Decision-Making."  <u>See</u> 47 Fed.Reg. 56334-36 (Dec.
16, 1982); 50 Fed.Reg. 40365-67 (Oct. 3, 1985); 52 Fed.Reg.
46596-97 (Dec. 9, 1987).  In the regulation, the Parole
Commission notes "For Category Eight, no upper limits are
specified due to the extreme variability of the cases within this
category."  28 C.F.R. § 2.20 Table "Guidelines for Decision-
Making" Note 1.

IV.  <u>ANALYSIS</u>

A federal court's role in reviewing decisions by the Parole
Commission is limited.

> The appropriate standard of review of the Commission's
> findings of fact "is not whether the [Commission's
> decision] is supported by the preponderance of the
> evidence, or even by substantial evidence; the inquiry
> is only whether there is a rational basis in the record
> for the [Commission's] conclusions embodied in its
> statement of reasons."  <u>Zannino v. Arnold</u>, 531 F.2d
> 687, 691 (3d Cir. 1976); <u>see also</u> 28 C.F.R. § 2.18
> ("The granting of parole to an eligible prisoner rests
> in the discretion of the United States Parole
> Commission.").  This Court should review, however,
> whether the Commission "has followed criteria
> appropriate, rational and consistent" with its enabling
> statutes so that its "decision is not arbitrary and
> capricious, nor based on impermissible considerations."
> <u>Zannino</u>, 531 F.2d at 690.  To this end, "the Commission
> may not base its judgment as to parole on an inaccurate
> factual predicate."  <u>Campbell v. United States Parole
> Comm'n</u>, 704 F.2d 106, 109 (3d Cir. 1983) (citations
> omitted).

<u>Furnari v. Warden, Allenwood Federal Correctional Institution</u>,
218 F.3d 250, 254 (3d Cir. 2000).

In making its decisions, the Parole Commission may consider
hearsay, counts of an indictment that have been dismissed, and

14

information in a separate dismissed indictment.  See Campbell v. United States Parole Commission, 704 F.2d 106, 109-10 (3d Cir. 1983) (collecting cases).

"[T]he appropriate judicial remedy when an agency exceeds its discretion is a remand to the agency for further proceedings consistent with the court's opinion."  Bridge v. United States Parole Commission, 981 F.2d 97, 105 (3d Cir. 1992) (citing Federal Power Comm. v. Idaho Power Co., 344 U.S. 17, 20 (1952)).

A.   The March 26, 2009 Parole Eligibility Date

Petitioner alleges that, in April 2007, the Commission improperly used a March 26, 2009, parole eligibility date after completion of the first habeas proceeding in this Court.

Contrary to Petitioner's allegations, the Commission was following the Order of this Court when it calculated the March 26, 2009, date.  In addition, the Commission acted timely to request relief from this Court with respect to that calculation, to the benefit of Petitioner.  Thus, it was not until September 25, 2007, that this Court held that Petitioner's parole eligibility date was September 5, 2007.  Petitioner was not deprived of due process when the Commission utilized the March 26, 2009, date in April, 2007.  Moreover, even if there were any error in the use of that date, Petitioner has suffered no prejudice, as the Commission has timely afforded Petitioner the subsequent parole hearings to which he was entitled.  In any

15

event, as the only relief this Court could order would be a remand for a hearing, and Petitioner has since waived one hearing and had another hearing, from which an administrative appeal is now pending, this Court could provide Petitioner with no relief. Petitioner is not entitled to any habeas relief on this claim.[5]

B.      The "Murder Rule" Presumption

Petitioner alleges that, in the April 2007 hearing, the Commission improperly used the "Murder Rule" presumption to deny him parole.

The "Murder Rule" presumption against parole is contained in the Note to Guidelines for Decisionmaking table, 28 C.F.R. § 2.20, and currently provides, in pertinent part:

> For Category Eight, no upper limits are specified due to the extreme variability of the cases within the category.  For decisions exceeding the lower limit of the applicable guideline category by more than 48 months, the Commission will specify the pertinent case factors upon which it relied in reaching its decision, which may include the absence of any factors mitigating the offense.  This procedure is intended to ensure that the prisoner understands that individualized consideration has been given to the facts of the case, and not to suggest that a grant of parole is to be presumed for any class of Category Eight offenders. However, a murder committed to silence a victim or witness ... shall not justify a grant of parole at any point in the prisoner's sentence unless there are

---

[5] Respondent construes this claim differently than does this Court; Respondent construes the claim as asserting that Petitioner was wrongfully deprived of an initial hearing in 1986 as to his three-year sentence for attempted murder.  Again, to the extent the claim could be so construed, Petitioner has not established any prejudice, nor could this Court at this time provide any relief on such a claim.

16

<u>compelling circumstances in mitigation ....  Such</u>
<u>aggravated crimes are considered, by definition, at the</u>
<u>extreme high end of Category Eight offenses.  For these</u>
<u>cases, the expiration of the sentence is deemed to be a</u>
<u>decision at the maximum limit of the guideline range.</u>
(The fact that an offense does not fall under the
definition herein does not mean that the Commission is
obliged to grant a parole.)

28 C.F.R. § 2.20, Guidelines for Decisionmaking table, Note
(emphasis added).

As noted above, the Commission's May 22, 2007, Notice of
Action stated, "Your offense behavior has been rated as Category
Eight severity because it involved Attempted Murder. ... [A]
decision more than 48 months above the minimum guidelines is
warranted because the offense behavior is aggravated in that it
included the conspiracy to murder a potential witness in a
criminal proceeding against you."  It is not at all clear, from
this language, that the Commission applied the "Murder Rule"
presumption against Petitioner.  In any event, Petitioner did not
administratively appeal this claim.  For that reason, alone, this
claim is subject to dismissal.

More importantly, however, the only remedy to which
Petitioner would be entitled would be remand.  As the Commission
has already advised Petitioner that it would not apply the
presumption in future hearings, and has already conducted a
hearing in which the presumption was not applied, it appears that
this claim is moot.  Accordingly, Petitioner is not entitled to
relief on this claim.

17

C.   <u>The Claim of Vindictiveness</u>

Petitioner alleges that the Commission acted vindictively in 2007, in retaliation for the prior habeas action, when it calculated the March 26, 2009, parole eligibility date and when it denied him parole.  Indeed, Petitioner asserts that the Commission should be "presumed" to have acted vindictively.

As this Court has already stated, the calculation of the March 26, 2009, parole eligibility date was pursuant to this Court's Opinion and Order in the prior habeas action.  As this date was later than the earlier-challenged date, the Commission timely sought relief from this Court's Order.  There was no vindictiveness in this action.

The actions of the Commission in seeking relief from this Court's Order belie any "presumption" of vindictive behavior in connection with the 2007 decision to deny parole.  Petitioner has offered this Court no evidence, whatsoever, suggesting vindictiveness in the 2007 denial of parole.  Petitioner is not entitled to relief on this claim.

D.   <u>The 2007 Denial of Parole</u>

Petitioner challenges, on its factual basis, the 2007 denial of parole.  Petitioner asserts that the Commission "ignored" the current offense, which Petitioner characterizes as the 1987 five-year sentence for traveling in foreign commerce to promote unlawful criminal enterprise, and that the Commission wrongfully

considered his "expired" 1985 sentence for attempted murder.  In addition, Petitioner challenges his Salient Factor Score of 8, asserting that it should be 9.[6]  Specifically, Petitioner alleges that the Commission improperly scored him as having one prior conviction (rather than none) and as having committed one offense while confined.

The challenge as to the consideration of the attempted murder conviction in setting Petitioner's Offense Severity Rating is meritless.  The Commission properly considered Petitioner for parole with respect to the three-year conviction for attempted murder, in accordance with this Court's prior finding that Petitioner was still subject to parole on that sentence.  Indeed, the Commission properly considered factors related to all of Petitioner's parolable sentences.  The applicable regulation provides:

> In cases where multiple sentences have been imposed (whether consecutive or concurrent, and whether aggregated or not) an offense severity rating shall be established to reflect the overall severity of the underlying criminal behavior.  This rating shall apply whether or not any of the component sentences have expired.

---

[6] The Salient Factor Score predicts risk of recidivism and is, by definition, calculated without reference to the nature and circumstances of the current offense.  See 28 C.F.R. § 2.20 (2000) (points are awarded based upon prior convictions, prior commitments of more than 30 days, age at time of current offense, recent commitment-free period of three years, probation/parole/confinement/escape status at time of current offense, and age of offender).  A higher score is deemed predictive of a lower risk of recidivism.

19

28 C.F.R. § 2.20, Chapter 13, Subchapter A, ¶ 3.  The Commission properly considered the 1985 sentence for attempted murder.

Petitioner's challenge to the Salient Factor Score is similarly meritless.  As an initial matter, Petitioner admits a 1969 conviction for criminal usery, which resulted in a sentence of three years' probation.  His criminal behavior began again no later than 1977, less than ten years after the 1969 conviction. Cf. 28 C.F.R. § 2.20 Salient Factor Scoring Manual ¶ A.8. "Ancient Prior Record" (prior convictions meeting the definition of an "Ancient Prior Record," including the requirement that the prior conviction occurred at least ten years prior to commencement of the current offense behavior, are not counted in the Salient Factor Score).[7]  In any event, whether the SFS is an

---

[7] In a rambling manner, Petitioner also contests the Commission's scoring with respect to criminal activity occurring while on probation, parole, or confinement.  Petitioner provides no evidence to dispute the Commission's finding that he engaged in criminal activity while on probation.  Petitioner's criminal history information reveals that Petitioner's first federal offense, for which he was convicted, took place while he was a fugitive from another federal indictment and the most recent Prehearing Assessment, attached as Exhibits 11-14 to Petitioner's Motion, reflects a probation violation on January 1, 1977.  In addition, while confined and after conviction, he continued with his effort to murder a witness.  Also, Petitioner's 1997 conviction for distribution of Schedule I narcotics, Criminal No. 83-0506 (E.D.N.Y.), was for criminal activity that took place while Petitioner was confined at the United States Penitentiary at Lewisburg.  Accordingly, it appears that the Commission properly scored Petitioner as having engaged in criminal activity while confined or on probation or parole.  Taking these issues into account, Petitioner's Salient Factor Score of 8 is correct under either the older or the current version of the Salient Factor Scoring Manual.

8 or a 9, the Guidelines Range for his offense is 100-plus months.  Once again, Petitioner can establish no prejudice from the alleged error.

Finally, Petitioner asserts generally that the Statement of Reasons does not justify the decision to continue Petitioner to the end of his sentence.  This Court disagrees.  The severity of Petitioner's crime of attempting to murder a witness constitutes a "rational basis" sufficient to support the Commission's decision.  Minor disagreements about the scoring of the Salient Factor Score do not appear to have affected the Commission's decision.

In any event, as noted above, this claim also appears to be moot.  Petitioner has since been considered again for parole, and has been granted parole, effective February 3, 2010. Accordingly, this Court could provide Petitioner no relief on this claim, as its only remedy is remand for a new hearing, which Petitioner has already received.  Petitioner is not entitled to relief on this claim.

E.   The Request for Leave to Amend

As noted above, during the pendency of this action, Petitioner was again considered for parole, and was granted parole as of February 3, 2010.  Petitioner's administrative appeal of that hearing is pending.  Nevertheless, Petitioner has

submitted a Motion [10] requesting leave to again amend the Amended Petition to challenge his 2009 parole hearing.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be freely given "when justice so requires." Here, however, the administrative appeal is pending.  In addition, Petitioner's challenges are to the accuracy of certain facts upon which the decision was based.  This is precisely the type of claim that should be administratively exhausted before being brought to the federal courts.  Accordingly, the Motion will be denied.

### V.   CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


  **s/ Jerome B. Simandle**
Jerome B. Simandle
United States District Judge

Dated:  **December 23, 2009**

22